11-2989-cr
*United States v. Ward, et* al.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 11ᵗʰ day of December, two thousand and twelve.

PRESENT:

> JOSÉ A. CABRANES,
> REENA RAGGI,
> > *Circuit Judges,*
>
> JED S. RAKOFF,
> > *District Judge.*[*]

---

UNITED STATES OF AMERICA,

> *Appellee,*

> v.

ROBERT WARD (a.k.a. "RB"), MARION PEGESE (a.k.a. "Dump," "Bill," "Amin"), AND TOUSSAINT DAVIS (a.k.a. "Toot," "John Healy, " "Toussaint Martin")

> *Defendants-Appellants,*

Nos. 11-2989 (L); 11-3058; 11-3172

---

[*] The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

**FOR DEFENDANTS-APPELLANTS:**   BEVERLY VAN NESS, Law Firm of Beverly Van Ness, New York, NY, *for* Defendant-Appellant Robert Ward.

BRUCE R. BRYAN (Jeffrey DeRoberts, *on the brief*) Bryan Law Firm, Syracuse, NY, *for* Defendant-Appellant Marion Pegese.

STEPHEN LANCE CIMINO, Law Firm of Stephen Lance Cimino, Syracuse, NY, *for* Defendant-Appellant Toussaint Davis.

**FOR APPELLEE:**   ROBERT A. PARKER, Appellate Section, Criminal Division, United States Department of Justice (Lanny A. Breuer, Assistant Attorney General, John D. Buretta, Acting Deputy Assistant Attorney General, Richard S. Hartunian, United States Attorney for the Northern District of New York, Brenda K. Sannes, Rajit S. Dosanjh, Assistant United States Attorneys, *on the brief*), Washington, DC, *for* Appellee.

Appeal from a judgment of conviction entered on July 21, 2011, by the United States District Court for the Northern District of New York (Norman A. Mordue, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of conviction is **AFFIRMED**.

Defendants-appellants ("defendants") Robert Ward ("Ward"), Marion Pegese ("Pegese"), and Toussaint Davis ("Davis"), appeal from a judgment of conviction entered against them for three counts: (1) conspiracy to interfere with interstate commerce by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951(a) ("Count One"); (2) interference with interstate commerce by robbery, in violation of 18 U.S.C. §§ 1951(a) and 2 ("Count Two"); and (3) murder as a result of possession and discharge of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1) and (j)(1), and pursuant to *Pinkerton v. United States*, 328 U.S. 640 (1946) ("Count Three"). A jury convicted the defendants on all three counts and the District Court sentenced each defendant to

2

concurrent terms of 240 months' imprisonment on Counts One and Two and life imprisonment on Count Three. We assume the parties' familiarity with the facts and procedural history of this case, to which we refer only as necessary to explain our decision to affirm.

On appeal, defendants collectively assert numerous claims of error. Foremost among these are challenges to the sufficiency of the evidence used to convict them, the testimony of government witnesses admitted by the District Court, certain of the instructions given to the jury in their trial, and the constitutional validity of their life sentences.

## BACKGROUND

The factual background set forth below is drawn from the record of the prior proceedings in this matter, taken "in the light most favorable to the prosecution," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

On August 26, 2005, at 3:45 p.m., the three defendants and another man, Eric Lane, entered Ballew Jewelers in Freehold, New Jersey, forced the store's employees into a back room at gunpoint, bound their hands and feet, and robbed the store of approximately $1.8 million dollars worth of diamonds and Rolex watches. Nearly six months later, in late February, 2006, the defendants conducted Internet research on jewelry stores in Utica, New York and took a daylong trip from Philadelphia, Pennsylvania to New Hartford, a suburb of Utica. On February 27, 2006, the defendants again traveled to New Hartford, this time accompanied by a fourth man, Walter Richardson ("Richardson"). While *en route* to New Hartford, the four men, traveling in two vehicles, pulled into a gas station and asked two other customers, Louis and Julie Shkane, for directions to Commercial Drive, some four miles away. Within about a half hour, a number of masked men entered Lennon's Jewelers, on Commercial Drive, and robbed it at gunpoint. At trial, Gary Lennon ("Lennon"), one of the store owners, testified to the presence of at least three men, but was unsure of the exact number. Lennon also testified that one of the men held a gun a few feet from his head

3

and handcuffed his left wrist to his right ankle. Leslie Liesch ("Liesch"), another employee, testified that she alerted the police by phone, after which two of the robbers discovered her lying on the floor, and stood over her while one pointed a gun at her head and the other repeatedly yelled, "shoot the bitch in the head." At this time, Liesch heard someone else shout, "the cops are here," and the robbers fled the store in two separate vehicles, absconding with nearly a million dollars worth of merchandise.

Two officers responding to the robbery, Joseph Corr and Ronald Fontaine, pursued one of these vehicles until it crashed, at a high speed, into a gasoline pump. Davis and Richardson then exited the vehicle and fled on foot. Officer Fontaine testified at trial that as he pursued and arrested Davis, Officer Corr was shot and killed by Richardson. Evading arrest, Richardson then hijacked a truck at gunpoint and fled to Chester, Pennsylvania. Richardson was killed the next morning in a firefight with law enforcement agents who had tracked him to that location and attempted to arrest him.

Ward and Pegese, who fled from the robbery in a separate vehicle, were arrested later in 2006. While incarcerated pending trial, Ward and Pegese approached a fellow inmate, David Carroway ("Carroway"), and discussed the Lennon robbery with him. Carroway later approached law enforcement agents with the details of these conversations.

At trial, the government presented the testimony of fifty-six witnesses and introduced more than 150 exhibits into evidence. Among the witnesses were Carroway, and Louis and Julie Shkane. On November 5, 2010, the jury returned a verdict finding the defendants guilty on all counts. This appeal followed.

**A.**

All three defendants challenge the sufficiency of the evidence used to convict them of one or more counts. "We review *de novo* a challenge to sufficiency of the evidence." *United States v. Naiman*,

4

211 F.3d 40, 46 (2d Cir. 2000). However, "[w]e will not disturb a conviction on grounds of legal insufficiency of the evidence at trial if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal citations and quotation marks omitted). As a result, a defendant challenging the sufficiency of the evidence bears a "heavy burden," *United States v. Gaskin*, 364 F.3d 438, 459 (2d Cir. 2004), as the standard of review is "exceedingly deferential," *United States v. Hassan*, 578 F.3d 108, 126 (2d Cir. 2008). In evaluating sufficiency, we "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008) (internal citations, alterations, and quotation marks omitted).

The three defendants challenge their convictions on Count Three by arguing, *inter alia*, that *Pinkerton* liability is inappropriate because no jury could have found that Officer Corr's murder was reasonably foreseeable. Under *Pinkerton*, "a defendant who does not directly commit a substantive offense may nevertheless be liable if the commission of the offense by a co-conspirator in furtherance of the conspiracy was reasonably foreseeable to the defendant as a consequence of their criminal agreement." *United States v. Parkes*, 497 F.3d 220, 232 (2d Cir. 2007). "An offense by a co-conspirator is deemed to be reasonably foreseeable if it is a necessary or natural consequence of the unlawful agreement." *Id.*, at 232 (internal quotation marks omitted). In the context of armed robberies, "[t]he death of a victim is a natural consequence of a robbery which is premised on the use of overmastering force and violent confrontation." *Id.*; *see also United States v. Medina*, 74 F.3d 413, 417-18 (2d Cir. 1996) (use of a firearm was reasonably foreseeable in conspiracy to rob office during working hours). In addition, "[w]hether a particular substantive crime is foreseeable and in

furtherance of the conspiracy is a factual question to be determined by the jury." *United States v. Bruno*, 873 F.2d 555, 560 (2d Cir. 1989).

Pegese and Davis also challenge the sufficiency of the evidence supporting their convictions on Counts One and Two, claiming that the government did not prove the existence of a single conspiracy.[1] Davis further argues that there was insufficient proof of interstate commerce with respect to Count Two.

Upon our review of the record, there is no doubt that there was sufficient evidence for the jury to have found all three defendants guilty of Count Three based upon a *Pinkerton* theory of liability, as well as guilty of Counts One and Two.[2] While it is unnecessary to restate in detail the evidence presented at trial, which Judge Mordue thoroughly discussed in his Memorandum and Order dated July 8, 2011, we note that the government's case included cell-phone and site records demonstrating the defendants' communications and their whereabouts; a videotape of one of the robberies; the testimony of informants and cooperating witnesses, including Davis's former girlfriend, who identified the defendants in a videotape of the Ballew robbery; the testimony of Tarik Hooks, a lifelong friend of Pegese whose identity he usurped during the Lennon robbery; testimony by witnesses of the Lennon robbery; and the testimony of Carroway.

We conclude, on the basis of the record, that the defendants have not met their "heavy burden," substantially for the reasons outlined by Judge Mordue in his Memorandum and Order dated July 8, 2011. Accordingly, we affirm the sufficiency of their convictions on all counts.

---

[1] Pegese also raises this argument with respect to Count Three.

[2] Ward, who claims to have a severe limp, also presses his insufficiency claim on Count Three by arguing that he was outside the store while the robbery occurred; he notes that no Lennon employee noticed a robber who limped. Even crediting Ward's reading of this evidence, the jury might well have inferred that Ward was inside the store based upon other evidence presented. *See Chavez*, 549 F.3d at 124 (noting that on appeal inferences are drawn in favor of the government on insufficient evidence claims). Moreover, even if Ward had been outside the store during the Lennon robbery, there was ample evidence for the jury to conclude that the use of a firearm in fleeing the scene of the crime, and Officer Corr's subsequent death, was reasonably foreseeable.

**B.**

Defendants further claim that the District Court erred in denying motions to suppress testimony by various government witnesses. "The standard of review for evaluating the district court's ruling on a suppression motion is clear error as to the district court's factual findings, viewing the evidence in the light most favorable to the government, and *de novo* as to questions of law." *United States v. Rodriguez*, 356 F.3d 254, 257 (2d Cir. 2004).

Pegese claims that the District Court erred in not suppressing the testimony of two government witnesses, Louis and Julie Shkane, who identified the defendants as men asking for directions to *en route* to the Lennon robbery. In the context of identification procedures, "due process concerns arise only when law enforcement officers use [a] . . . procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 132 S. Ct. 716, 724 (2012). Even if such concerns arise, moreover, "[r]eliability is the touchstone for the admission of eyewitness identification testimony pursuant to the Due Process Clause of the Fourteenth Amendment," *Brisco*, 565 F.3d at 88, and "the identification evidence will be admissible if . . . the identification has independent reliability," *id.* at 88 (internal alterations omitted). Identification evidence is unreliable if it creates "a substantial likelihood of irreparable misidentification." *Perry*, 132 S. Ct. at 724 (internal quotation marks omitted).

In examining challenges to this identification evidence, the District Court held a hearing pursuant to *United States v. Wade*, 388 U.S. 218 (1967), and concluded that the Shkanes' identifications were not produced through unnecessarily suggestive procedures and consequently admitted them at trial. Upon review of the record, we see no reason to disturb the District Court's findings in this regard and, in any event, there is no basis for a conclusion that the identification evidence presented at trial was unreliable.

Pegese and Ward claim that the District Court should not have allowed the testimony of another government witness, David Carroway, arguing that Carroway—a fellow inmate with a reputation as a jailhouse lawyer—was acting as a law enforcement agent when he contacted the prosecutor's office to relay their admissions of criminal activity. The District Court held thorough hearings on this issue pursuant to *Massiah v. United States*, 377 U.S. 201 (1964), found that there was no evidence that law enforcement had instructed Carroway, and subsequently concluded that Carroway did not act as a law enforcement agent. *See United States v. Whitten*, 610 F.3d 168, 193-94 (2d Cir. 2010) (noting that an informant must be specifically instructed by law enforcement to acquire information about a particular defendant in order to be an agent). On appeal, we find no error in the District Court's ruling admitting Carroway's testimony.[3]

## C.

On appeal, Davis claims that the District Court erred in two of its jury instructions. "We review the propriety of jury instructions *de novo*, and will find error if the jury was misled about the correct legal standard or was otherwise inadequately informed of controlling law." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 146 (2d Cir. 2010) (internal citations and quotation marks omitted). However, we will only reverse a conviction based on improper jury instructions "where, viewing the charge as a whole, there was a prejudicial error." *United States v. Quattrone*, 441 F.3d 153, 177 (2d Cir. 2006) (internal quotation marks omitted). Taking the jury instructions "as a whole," we will not

---

[3] On appeal, Davis argues that Carroway's testimony regarding statements made by Ward and Pegese should not have been admissible as to him. We note that this argument was not sufficiently preserved for appeal and, in any event, is meritless as Carroway's testimony was properly admitted as a statement against the penal interest of the latter two defendants under Federal Rule of Evidence 804(b)(3) and was appropriately admitted against Davis under Federal Rule of Evidence 403. Likewise, defendants did not preserve their claim that the District Court erred in admitting testimony, principally by Carroway, that mentioned other robberies committed by them. Reviewing this claim on appeal for plain error, *see* F. R. CRIM. P. 52(b), we find no error, much less "plain error," inasmuch as the testimony was "necessary to complete the story of the crime on trial," *see United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (internal quotation marks omitted).

grant a new trial unless a jury instruction "misleads the jury as to [the] correct legal standard" or does not "adequately inform the jury [on] the law" and the error is not harmless. *Id.*

Davis first argues that the District Court should have required the jury to find that the Lennon robbery had a "substantial effect" on interstate commerce to sustain a conviction against him under the Hobbs Act. Our precedents foreclose this argument, *see United States v. Davis,* 689 F.3d 179, 187 (2d Cir. 2012) (noting that "even a potential effect on interstate commerce is sufficient to satisfy the jurisdictional element of the Hobbs Act"); *United States v. Silverio*, 335 F.3d 183, 186 (2d Cir. 2003) ("We have consistently held that only a *de minimis* showing is necessary to establish the interstate nexus required for Hobbs Act jurisdiction."), and we have held that where a victim company is engaged in interstate commerce, it is sufficient for Hobbs Act purposes to show that harm or potential harm would deplete its assets, *id.* Having reviewed the Hobbs Act jury instructions, we find them consistent with these principles.

Second, Davis argues that Count Three charged him with Officer Corr's murder under both aiding and abetting and *Pinkerton* theories of liability, but that the District Court only instructed the jury on the *mens rea* necessary to convict on the latter theory. As a point of fact, however, Count Three charged the defendants *only* under a *Pinkerton* theory of liability.[4] In sum, we find no merit to either of Davis's challenges to the District Court's jury instructions.[5]

**D.**

The defendants also raise a number of challenges to their sentences. Pegese argues that the District Court should have departed below the recommended sentence of imprisonment for life

---

[4] To the extent that the District Court made a single inadvertent mention of aiding and abetting liability, its subsequent oral clarification to the jury rendered any error harmless.

[5] Davis also argues that the District Court should have used a proposed special verdict sheet, rather a general verdict form. Having reviewed the instructions to the jury, we find that the District Court did not abuse its discretion in deciding not to use a special verdict sheet. *See United States v. Applins*, 637 F.3d 59, 82 (2d Cir. 2011) (noting that decisions on special interrogatories are within the "broad discretion" of a district court).

recommended in the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). We review Pegese's sentence for substantive reasonableness under an abuse of discretion standard. *See United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (en banc); *see generally In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining that the term of art "abuse of discretion" includes errors of law). We find no such abuse here, where the District Court "imposed a sentence within the properly calculated guideline range, which is typically considered to be within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Savoca*, 596 F.3d 154, 160 (2d Cir. 2010) (internal quotation marks omitted); *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006) (same). Moreover, it is clear from the record that in addition to imposing a sentence within the Guidelines range, Judge Mordue also considered the statutory sentencing factors set forth in 18 U.S.C. § 3553(a).[6] In addition, Pegese's principal argument that he should have received a shorter sentence because Richardson was more culpable for Officer Corr's murder is inapposite: Richardson, who is deceased, was not sentenced and Pegese received the same sentence of life imprisonment as the other defendants who participated in the Lennon robbery.

Davis claims the District Court erred in applying a five-level sentencing enhancement, pursuant to § 2B3.1(b)(2) of the Guidelines, based on the fact that two of the defendants brandished firearms during the course of the Ballew robbery. This claim is without merit. U.S.S.G. § 1B1.3(a)(1)(B) provides that sentencing enhancements are applied to all participants in a "jointly undertaken criminal activity," such as the Ballew robbery, for "all reasonably foreseeable acts." The

---

[6] Even if the record was arguably unclear, "we presume, in the absence of record evidence suggesting otherwise, that a sentencing judge has faithfully discharged her duty to consider the statutory factors." *Fernandez*, 443 F.3d at 30.

District Court did not err in determining that it would be reasonably foreseeable that a firearm would be brandished and used in the course of an armed robbery.[7]

In addition, Davis claims that the District Court inappropriately used the base offense level for first-degree murder under U.S.S.G. § 2A.1.1 to determine his base offense level. This claim, also, is without force. We find no error in applying the first-degree murder guideline to Davis's conviction for using a firearm during a crime of violence under 18 U.S.C. § 924(j)(1). *See* 18 U.S.C. § 1111 (providing that a murder committed during escape or in an attempt to perpetrate robbery is first-degree murder); U.S.S.G. § 2B3.1(c) (noting that murder under 18 U.S.C. § 1111 merits the application of Guidelines § 2A.1.1).

### E.

Davis raises two additional claims which merit brief discussion. First, Davis argues that his sentence violates the "narrow proportionality principle" under the Eighth Amendment's clause prohibiting cruel and unusual punishment. Upon review, we find no merit to this claim. *See generally Graham v. Florida*, 130 S. Ct. 2011, 2021 (2010) (prohibiting "extreme sentences that are grossly disproportionate to the crime" (internal quotation marks omitted)). Second, Davis raises claims based on an earlier prosecution in state court, arguing that his federal prosecution was barred under constitutional double jeopardy principles and "a narrow exception" to the doctrine of dual sovereignty where "one of the sovereigns effectively controlled the other, and the subsequent prosecution was merely a sham," *United States v. Arena*, 180 F.3d 380, 399 (2d Cir. 1999). We find the first claim to be barred by our prior summary order in this case, *United States v. Ward, et al.*, No.

---

[7] In a conclusory assertion, Davis also seems to suggest that the *jury* must make a specific finding of reasonable foreseeability in order to apply this sentencing enhancement. Davis cites no specific authority for this proposition, which has no basis in law.

09-00390 (2d Cir. Dec. 06, 2010) (Dkt. No. 185), and the second claim to lack any basis in the

factual record. Accordingly, we dismiss these claims as well.

## CONCLUSION

We have considered all of the defendants' remaining arguments on appeal and find them to

be without merit. Accordingly, for the reasons stated above, we **AFFIRM** the July 21, 2011

judgment of conviction.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk